**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DARNELL KIRKLAND, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. 07-2134 (JAG) |
| v. : | |
| : | |
| DEPARTMENT OF : | **OPINION** |
| CORRECTIONS, et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

> DARNELL KIRKLAND, #189474, Plaintiff Pro Se
> Hudson County Jail
> Kearny, New Jersey  07032

**GREENAWAY, JR., District Judge**

Plaintiff DARNELL KIRKLAND (hereinafter "Plaintiff"), a prisoner currently confined at Hudson County Jail, Kearny, New Jersey, seeks to bring this 42 U.S.C. § 1983 action <u>in forma pauperis</u> without prepayment of fees, pursuant to 28 U.S.C. § 1915.  Plaintiff submitted for filing his complaint (hereinafter "Complaint").  Plaintiff also submitted his application to proceed <u>in forma pauperis</u>, pursuant to 28 U.S.C. § 1915(a).[1]  This Court shall grant Plaintiff <u>in forma pauperis</u> status and

---

[1] Following this Court's May 23, 2007 Order, Plaintiff supplemented his affidavit of indigency with his 6-month prison account statement.  Plaintiff does not have three qualifying dismissals which would preclude <u>in forma pauperis</u> status.  <u>See</u> 28 U.S.C. § 1915(g).

1

shall direct the Clerk of the Court to file Plaintiff's Complaint.

For the reasons stated below, this Court will dismiss, without prejudice, certain of Plaintiff's claims, sua sponte, for failure to state a claim upon which relief can be granted and shall allow Plaintiff's remaining claim to proceed.

### BACKGROUND

Plaintiff asserts that, on January 17, 2007, Plaintiff and his cellmate were approached by Defendant Moreano, a correctional officer at the place of Plaintiff's confinement. (See Compl. ¶ 4.) Defendant Moreano allegedly offered Plaintiff and Plaintiff's cellmate the opportunity to sell controlled dangerous substance(s) for Defendant Moreano. (See id.) (The sales, presumably, would be made by Plaintiff and his cellmate to other members of the prison's general population.) Plaintiff and his cellmate declined the offer. (See id.) Suspecting that Defendant Moreano would repeat the offer, Plaintiff and his cellmate obtained a tape recorder. (See id.) When Plaintiff's (and his cellmate's) premonition materialized, i.e., Defendant Moreano returned and repeated the offer, Plaintiff and his cellmate recorded the conversation. (See id.)

The Complaint alleges that Plaintiff then turned the tape recoding over to Plaintiff's housing officer. (See id.) Plaintiff's housing officer allegedly forwarded the tape to

another officer who, in turn, turned the tape in to the Office of Internal Affairs, Special Investigation Division.  (See id.)

Plaintiff also asserts that on January 18, 2007 (the day following the incident), Plaintiff and his cellmate were placed in twelve-day solitary confinement by Defendant Powers.  (See id.)  Plaintiff asserts that his placement in solitary confinement was a retaliatory action on the part of Plaintiff's prison officials.  (See id.)  In addition, Plaintiff now asserts that the forwarding of the tape to the Office of Internal Affairs unconstitutionally "creat[ed] an atmosphere that would potentially cause [Plaintiff] harm" and "mentally afflict[ed] Plaintiff] with stress and mental torture [of] not knowing what he [that is, an unspecified person who might endanger Plaintiff's well-being,] would try."  (Id.)

Plaintiff alleges that he suffered an injury in the form of being unable to fall asleep without taking a sleeping pill and also the injury of becoming "extremely paranoid."  (Id.)  Plaintiff now seeks compensatory damages in the amount of $1,000,000 and punitive damages of $2,000,000.

## DISCUSSION

### A. Standard of Review

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321

(April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." <u>Santana v. United States</u>, 98 F.3d 752, 755 (3d Cir. 1996).

A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

In determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions." <u>Id.</u> Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

Liberally construing the statements made in Plaintiff's Amended Complaint, see Haines, 404 U.S. at 520, this Court presumes that Plaintiff alleges the following: (1) Plaintiff's Eighth Amendment rights could be violated by prison officials' potential failure to protect him from the harm that could be inflicted upon Plaintiff; (2) Plaintiff's Eighth Amendment rights were violated because Plaintiff feels "paranoid" and is unable to fall asleep without sleeping medication; (3) Plaintiff's Due Process rights were violated by Plaintiff being placed in a solitary confinement; and (4) Plaintiff's First Amendment rights were violated by retaliation for Plaintiff's turn-over of the tape (reproducing Plaintiff's conversation with Defendant Moreano) to prison officials.

**B. Claims Not Viable Under § 1983**

    **1. Eighth Amendment Claims**

        **a. Failure to Protect Claim**

Plaintiff asserts that his prison officials "creat[ed] an atmosphere that would potentially cause [Plaintiff] harm." (See Compl. ¶ 4.)

Prison officials have a duty under the Eighth Amendment to "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting

5

Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  To state a failure-to-protect claim under 42 U.S.C. § 1983, an inmate must show objectively that he is "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant knows of and disregards that risk.  Farmer, 511 U.S. at 837.  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  Plaintiff's Complaint must indicate that there is an imminent threat to Plaintiff's health and/or life.

Specifically, Plaintiff must show that: (1) he is currently "incarcerated under conditions posing a substantial risk of serious harm"; and (2) that the Defendants expressly intend to cause Plaintiff harm and/or know and disregard the risk of harm to Plaintiff.  See Farmer, 511 U.S. at 837; Whitley v. Albers, 475 U.S. 312, 319 (1985).

Here, Plaintiff's contentions indicate that he has suffered no injury and, short of pointing to his anxiety, Plaintiff fails to allege a single fact indicating that his health/life is in danger, or that Defendants either expressly intend to cause Plaintiff harm, or that they know and are disregarding the risk of harm to Plaintiff.  Plaintiff's claim, not articulated in present tense terms, is unripe since his failure to make factual assertions renders the claim highly speculative.  See Rouse v.

6

Pauliilo, 2006 U.S. Dist. LEXIS 17225 (D.N.J. Apr. 5, 2006) (citing Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999), the case spelling out that a 42 U.S.C. § 1983 claim by a prisoner about his future conditions cannot be deemed ripe); Pilkey v. Lappin, No. 05-5324, 2006 U.S. Dist. LEXIS 44418, at *45 (D.N.J. June 26, 2006) ("Plaintiff's [anxiety paraphrased as his claim of] potentially diminished safety fail[s] to state a claim upon which relief may be granted"); cf. Patterson v. Lilley, No. 02-6056, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing condition, not a speculative future injury).

Plaintiff's "failure to protect" claim will be dismissed because he failed to state a claim upon which relief can be granted.

### b. Medical Injury Claim

Plaintiff also asserts that prison officials at his place of confinement created a situation, under which Plaintiff experiences "mental stress" and "paranoia," and cannot fall asleep without a soporific. (See Compl. ¶ 4.) Liberally construed, these allegations could be interpreted as Plaintiff's claim that he suffered a medical injury in violation of his Eighth Amendment rights.

Plaintiff has a protected right in being incarcerated at a place of confinement conforming to the standards set forth by the

7

Eighth Amendment. The Constitution "does not mandate comfortable prisons," Rhodes v. Chapman, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976).

The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Rhodes, 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

Thus, to prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs. See

<u>Estelle v. Gamble</u>, 429 U.S. 97; <u>Rouse v. Plantier</u>, 182 F.3d 192, 197 (3d Cir. 1999). Persistent severe pain qualifies as a serious medical need. A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth County Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).

"Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." <u>Rouse</u>, 182 F.3d at 197.

Plaintiff's medical injury here appears to be that of anxiety and insomnia. Such an injury cannot qualify as a severe medical need. <u>See</u> <u>Universal Calvary Church v. City of New York</u>, No. 96-4606, 2000 U.S. Dist. LEXIS 15153 (S.D.N.Y. Oct. 13, 2000) (insomnia does not qualify as a "serious injury"); <u>see</u> <u>also</u> <u>Pilkey</u>, 2006 U.S. Dist. LEXIS 44418, at *21 ("Plaintiff's anxiety and neuroticism[] do not present a 'serious medical need'"). Further, Plaintiff's Complaint neither indicates that Plaintiff sought medical assistance regarding his anxieties and/or insomnia nor alleges that Plaintiff was denied medical assistance.

The Complaint fails to set forth a single fact indicating that Plaintiff's prison officials were, or even could have been, deliberately indifferent to Plaintiff's medical needs. Plaintiff's Eighth Amendment medical care claim shall be dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

**2. Due Process Claim**

Plaintiff also complains about his placement in solitary confinement. (See Compl. ¶ 4.) This Court must construe these allegations liberally. In essence, Plaintiff claims that the imposition of the disciplinary sanction violated Plaintiff's Fourteenth Amendment right to Due Process of law.

A person is entitled to Due Process of law when a government action deprives him or her of life, liberty, or property. Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979). The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. IV. To analyze Plaintiff's Due Process claim, the first step is to decide whether he was deprived of a liberty or property interest protected by Due Process. See Fuentes v. Shevin, 407 U.S. 67 (1972). If not, it is not necessary to consider what process is due. See Morrissey v. Brewer, 408 U.S. 471 (1972). As averred,

Plaintiff would be entitled to Due Process only if he had a protected liberty interest in avoiding twelve days in solitary confinement.

Liberty interests protected by the Due Process Clause may arise under the Constitution itself or may be created by state statutes or regulations. See Sandin v. Conner, 515 U.S. 472, 483-484 (1995). But, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Id. at 478. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see also Vitek v. Jones, 445 U.S. 480, 493 (1980).

Convicted inmates, like Plaintiff, have no liberty interest in avoiding segregated confinement arising by force of the Due Process Clause itself. See Hewitt v. Helms, 459 U.S. 460, 466-67 & n.4 (1983); Montanye, 427 U.S. at 242. However, a State may also create a protected liberty interest by statute or regulation. Sandin, 515 U.S. at 483-84.

In Sandin, the Supreme Court announced a new standard for determining whether a state has created a liberty interest for

11

convicted prisoners.  "The Court explained that mandatory language in a state law or regulation can create a protected liberty interest only if the alleged deprivation 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Torres, 292 F.3d 141 at 151 (quoting Sandin, 515 U.S. 484).  Spending twelve days in segregated confinement is not an atypical and significant hardship in relation to the ordinary incidents of prison life. "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest."  Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); accord Sandin, 515 U.S. at 486 (punitive segregation for 30 days is not an atypical and significant hardship); Griffin v. Vaughn, 112 F.3d 703 (3d Cir. 1997) (administrative segregation as a suspect for 15 months pending completion of an investigation of the rape and beating of a female corrections officer does not impose atypical and significant hardship); see also Fraise v. Terhune, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoners have no protected liberty interest in being free of indefinite segregated confinement in Security Threat Group Management Unit).

   Plaintiff's Complaint fails to allege facts to support a claim of a protected liberty interest in avoiding twelve days in

12

segregated confinement. Confinement under these circumstances does not violate Plaintiff's Fourteenth Amendment right to Due Process of law. Plaintiff's Due Process claim will be dismissed, without prejudice, for failure to state a claim upon which relief can be granted.

**C.  Claim Potentially Viable Under § 1983: First Amendment**

While Plaintiff had no protected liberty interest in avoiding twelve days in solitary confinement, Plaintiff does have protected First Amendment rights that might have been violated if, in fact, Plaintiff was retaliated against for reporting the alleged illegal conduct of Defendant Moreano to prison officials.

The First Amendment offers protection for a wide variety of expressive activities. See U.S. CONST. amend I. These rights are lessened, but not extinguished, in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. See Turner v. Safley, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's rights under the First Amendment. See Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).

To prevail on a retaliation claim under 42 U.S.C. § 1983, Plaintiff must demonstrate (1) that he was engaged in protected activity; (2) that he suffered an "adverse action" by government officials; and (3) that there is "a causal link between the

exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225); see also Carter v. McGrady, 292 F.3d 152, 157 (3d Cir. 2002).

Since Plaintiff's transfer of the tape recording relating his conversation with Defendant Moreano could be interpreted as Plaintiff's submission of a grievance to his prison officials, his action is deemed to be a protected activity under the First Amendment.

Here, Plaintiff relies on the temporal proximity between his protected conduct and adverse actions of prison officials. This reliance satisfies the third threshold of the pleading requirement of the retaliation test, that is, the causation element. By asserting that "the timing of the alleged retaliatory action was 'unusually suggestive' of retaliatory motive," prong three appears to be satisfied. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997); see also Rauser, 241 F.3d at 334.

Since Plaintiff's allegations suggest that by asserting that he was placed in segregated confinement right after turning the tape over to the custody of prison officials, and without any other reason for such placement, this Court concludes that Plaintiff has met his pleading burden of establishing a causal link and satisfying the third element.

14

This Court concludes that a <u>sua sponte</u> dismissal of Plaintiff's First Amendment claim is not warranted at present. <u>See</u> <u>Alston</u>, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

## **CONCLUSION**

For the reasons set forth above, Plaintiff's Eighth and Fourteenth Amendment claims will be dismissed, without prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief can be granted. Plaintiff's First Amendment claim will survive this Court's initial review.

An appropriate Order accompanies this Opinion.


Dated:  December 10, 2007


    S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.